### NATIONAL WASHBOARD CO. v. GOLDSTEIN.

(Circuit Court of Appeals, Second Circuit. July 17, 1912.)

#### No. 227.

·TRADE-MARKS AND TRADE-NAMES (§ 95*)—UNFAIR COMPETITION—INJUNCTION.
An order affirmed, which denied a preliminary injunction on affidavits to restrain defendant from using certain arbitrarily selected numbers on washboards manufactured and sold by him to indicate the size, style, and shape of the boards to which they are applied, because complainant had previously adopted the same numbers to serve a similar purpose, where it was not clearly shown that it used them to indicate origin, and the products of the respective parties were otherwise clearly distinguishable.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*

Unfair competition in use of trade-marks or trade-names, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Lacombe, Circuit Judge, dissenting.

---

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by the National Washboard Company against Joseph Goldstein. From an order denying a preliminary injunction, complainant appeals. Affirmed.

Appeal from an order refusing to grant a preliminary injunction restraining the defendant from using certain arbitrary numbers in connection with the sale of washboards. This motion was made on the 23d of February, 1912, and was decided March 15, 1912, the court filing the following memorandum: "In view of the conflicting statements concerning the significance and use of arbitrary numbers on washboards I am not disposed to grant at this time and upon affidavits a further injunction based upon the use of numbers alone."

Prior to this and on November 11, 1911, the court had granted a preliminary injunction restraining the defendant from marking the washboards sold by him in imitation of the complainant's washboards and from simulating any of the complainant's trade brands or markings in connection with the sale of washboards. This order has so far been complied with so far as brands, names and markings are concerned. The present motion is designed to extend the injunction so as to prohibit the use of certain "identifying figures or numbers used by complainant" in the manufacture and sale of washboards.

The bill contains the following allegation: "That the washboards so manufactured and sold by your orator as aforesaid are of various styles, and that for the purposes of identifying said styles, and distinguishing them from each other your orator adopted and applied to said washboards of its manufacture certain arbitrarily selected numbers. That among the numbers so arbitrarily selected by your orator and applied to the washboards of its manufacture for said purpose were the numbers 500, 501, 604, 609, 808, 809, 831, 840, 841, 850 and 851." It is the use of these numbers for identifying the styles of washboards that the complainant seeks to enjoin.

Drury W. Cooper and Edward Rector, for appellant.

O. Ellery Edwards, Jr., and Benedict S. Wise, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). There is no question that before the injunction of November 11, 1911, was issued, the defendant had so dressed his goods in imitation of the complainant's trade-names and brands that the public might be deceived into taking his washboards for those of the complainant. All of these questions have, however, been eliminated by the changes made pursuant to the directions of the order.

We understood the complainant to concede at the argument that practically the only question now presented for consideration relates to the use of the arbitrarily selected numbers; but whether conceded or not this, in our judgment, is the only question to be considered. We are, therefore, confronted with the single proposition—should the court enjoin the use by the defendant of numbers designed to show the style of his washboards and to distinguish them one from the other, because the complainant had previously adopted similar numbers to serve a similar purpose and, perhaps, to indicate origin?

We do not deem it necessary to answer this question definitely at this time. It is sufficient to say that we think it too doubtful to be answered affirmatively upon a motion for a preliminary injunction.

It is undoubtedly true, where a manufacturer has selected an arbitrary combination of figures or letters to designate his goods, which combination in the minds of the purchasing public has become a substitute for the name of the manufacturer as indicating origin, that the courts have, in several instances, enjoined the use of such a combination by a rival manufacturer. But in many of these cases the figures were part of a general scheme of dressing up the goods for the market and were considered in connection with and as parts of other marks, brands and insignia. Here we are considering the numbers alone on goods, which in other respects, are now clearly distinguishable from the complainant's goods. In the cases referred to the courts have been convinced that the numbers or letters were designed to indicate origin.

In the case at bar this is seriously disputed and it is vigorously contended that the defendant adopted the numbers simply and solely to indicate the size, shape and style of the respective boards so that, in ordering, the purchaser can readily indicate the board he desires, in the same manner as a pair of shoes, a hat or a collar is ordered by number. Again, we are unable to find any proof that purchasers have actually been deceived since the injunction of November 11th, by the use of the numbers. Indeed it seems quite improbable that, in existing conditions, a purchaser having the ordinary mental equipment, can be so deceived. The complainant's boards are now plainly marked in red ink "National," the defendant's boards are plainly marked in black ink "Manhattan." If a purchaser has examined into the respective merits of the two boards and actually desires a National, it is impossible to believe that he can be induced to take a Manhattan because the same number appears on both. If he has no choice between them it is manifest that he cannot be defrauded. There is no substantive proof of fraud, or deception, or even of confusion, which can be attributed to the numbers alone. It is, of course, convenient to have the same number indicate the size and quality of the boards, no matter who may be the maker, and the proof should be clear that it was adopted with intent to injure and defraud the manufacturer first using it.

The questions in controversy are questions of fact; they have not been clearly established in favor of the complainant and should not be decided upon affidavits, but should await the final hearing after the witnesses have been tested by cross-examination.

The order is affirmed with costs.

LACOMBE, Circuit Judge (dissenting). I am unable to concur with my Associates and think this an especially vicious case of unfair competition. Defendant for several years subsequent to 1907 marked his washboards with various combinations of words, containing his business name and address and some arbitrary word, "Diamond," "Globe," or what not, indicating the size and style of washboard. During the same period complainant manufactured and marketed washboards, marking them with a combination in black of its own name, its business address, the word "National" in a contrasting color

(red), and certain arbitrary numbers designating size and style of washboard. In 1911 defendant, in place of the mark it had theretofore used on one side of its washboards, substituted a Chinese copy of complainant's mark, with the exception that the word in red was "Manhattan," instead of "National." No amount of testimony (and there was such testimony) by defendant, or his sons, all interested parties. could convince me that he did not intend by the substitution to mark his washboards in such a way that persons might mistake them for complainant's, and did not expect that thereby the sale of his own goods might be increased.

It must be assumed that the defendant equally with the purchasing consumer has "the ordinary mental equipment." If so, it follows that he changed from the old to the new style of marking his goods, not fortuitously, but with an intelligent purpose. That purpose is manifest. This was unfair trading, and in a former suit the court so held and ordered defendant to put a stop to it.

Defendant then modified his mark. The details need not be discussed, since the new mark seems to be sufficiently differentiated from complainant's, except only as to certain numbers, to restrain the use of which this suit is brought. These numbers, as has been said, were placed by complainant on its different sizes and styles of washboards, so that each size and style was marked with its assigned number. The numbers, in connection with the other indicia, are used by complainant to identify its product. These numbers are wholly arbitrary— such as 501, 608, 841, etc. They are not descriptive, as are the numbers stamped on collars. 15. 15½, 16, etc., to indicate the length of the article from buttonhole to buttonhole in inches; nor are they, like the numbers or the letters marked on shoes, 4, 4½, 5, a, b, c, etc., which indicate size; all the trade having for generations used "5a" to indicate a shoe of a certain length and width. Although arbitrary and originating with the plaintiff, they might, with its acquiescence, have been appropriated by the trade and generally used to designate goods of sizes and styles like those of complainant. But the testimony shows that nothing of this sort has occurred. Very many washboards are marked and sold with these numbers, the meaning of which the public is becoming accustomed to; but that is because complainant's business is a large one and it sells many goods. The significant fact is that complainant, and complainant only, since their adoption in 1907, has used these particular figures in connection with washboards, until defendant undertook to appropriate them in 1911, whereupon suit was promptly brought.

The combination of units, which may be used by any one who wishes through their use to identify some particular size or style of his goods, is practically unlimited. It was perfectly easy for defendant to select for his own use numbers which were not already associated in the mind of the public with complainant's. That he appropriated these numbers of the complainant with the expectation that their use might induce some persons to suppose that they were the same goods as those of the complainant, and that in that way the sale

of his own goods might be increased, seems to me manifest, and no amount of testimony by interested parties to the contrary is at all persuasive.

It seems to be a clear case of unfair trading, and I therefore dissent.